UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| KENNEDY FORSTER, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:08 CV 15 |
| MICHAEL HOOVER, TADD HOOVER, HARVEY HOOVER, and 277 SERIES EE $1000 UNITED STATES SAVINGS BONDS, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Before this court is the motion for summary judgment filed by *pro se* plaintiff Kennedy Forster (DE # 51) and the motions to strike portions of several exhibits to that motion, filed by defendants Michael, Tadd, and Harvey Hoover (DE # 53 - # 57). The motions have been fully briefed, and after consideration of both sides, plaintiff's motion for summary judgment (DE # 51) is denied and the motions to strike (DE # 53 - # 57) are denied as moot.

## I. BACKGROUND

*A. Factual Allegations*

Plaintiff brought suit against defendants seeking half of 277 one-thousand dollar U.S. savings bonds that he allegedly helped recover, on defendants' behalf, from the federal government. (DE # 1.) These bonds belong to defendants Michael (Michael) and Tadd Hoover (Tadd), the sons of defendant Harvey Hoover (Harvey). (DE # 61 at 1.) These bonds were seized by the federal government as part of a criminal prosecution

against Harvey for "tax crimes." (*Id.*) The Hoovers had been seeking the return of these bonds for several years with no success. (*Id.*) Plaintiff claims that he was contacted by Harvey, and conducted a conference call with Harvey and a legal researcher working for plaintiff where Harvey apparently explained the problem. (DE #51-2 at 2.) About a month after this first call, plaintiff conducted a conference call with Harvey, Michael and Tadd to discuss their case. (*Id.*) Plaintiff claims that two of his associates, Arthur Douglas and Hannibal Abdullah-El, also participated in the conference call. (*Id.*) Plaintiff initially requested a $5,000 fee for any work on defendants' case, a request they rejected. (*Id.* at 2-3.)

Plaintiff claims that he and defendants reached a "meeting of the minds" where all parties consented to a contingency agreement where he and defendants agreed that he would receive half of any bonds he recovered from the government, and that defendants would reimburse plaintiff for any costs of any "investigation, research and preparation of their case." (DE # 51-2 at 3.) He alleges that he prepared a claim under the Federal Tort Claims Act for defendants, submitted the claim to defendants for signing, which defendants returned to him. (*Id.* at 3-4.) According to plaintiff, he then sent the claim to the federal government on defendants' behalf. (*Id.* at 4.)

Several months later, plaintiff called Harvey to inquire if he or the other defendants had been contacted by the government about the bonds. (DE # 51-2 at 4.) Plaintiff claims that Harvey told him the government had sent Michael and Tadd a letter indicating its intent to reissue the bonds. (*Id.*) A few days after that conversation,

2

plaintiff then received a $2,000 check from defendants. (*Id.* at 4-5.) Plaintiff claims that this check satisfied the "portion of the oral contract" requiring defendants to reimburse plaintiff for the costs he incurred working on their case. (*Id.*) Defendants refused to schedule a conference call with plaintiff to discuss paying him his alleged contingency fee. (*Id.* at .) Plaintiff sent a "final demand for payment" letter to defendants, and defendants sent back a "Denial of Claim letter" denying that they owed plaintiff anything. (*Id.* at 5.) Plaintiff then filed suit in this court.

Defendants deny that there was any oral contract. Instead, they claim that they had entered into discussions with plaintiff about hiring him to pursue the bonds on their behalf, but never agreed to any contract and during the conference call specifically told plaintiff that they were not agreeing to anything at that time, and that any agreement would have to be in writing. (DE # 61 at 2; DE # 62 at 2; DE # 63 at 2.) Defendants then received some documents in the mail that plaintiff had prepared on their behalf. (DE # 62 at 2-3.) Defendants admit that they signed these documents, and sent them off in the mail, and eventually had the bonds returned to them by the government. (*Id.*; DE # 63 at 2-3.) Around the time that the bonds were returned, one of the defendants, Harvey, received a document titled "Acknowledgment and Agreement" from plaintiff. (DE # 61 at 2.) Defendants never signed this document. (DE # 62 at 3; DE # 63 at 3.) Eventually, the two defendants who owned the savings bonds, Michael and Tadd, decided to pay plaintiff $2,000 as compensation for preparing the documents that defendants signed and sent to the government. (*Id.*) They did not

discuss this with plaintiff and did not feel that they were required to pay him any money whatsoever. (*Id.*) Plaintiff cashed this check. (*Id.*)

  *B. Legal Allegations*

  After a flurry of unnecessary *pro se* filings and motions from both sides, plaintiff has now moved for summary judgment. (DE # 51.) Plaintiff's *pro se* motion asks for summary judgment on two claims– Breach of Contract and Fraud. (*Id.* at 1.) Specifically, he claims that defendants breached an oral contract with him to recover the bonds on their behalf in exchange for half of the proceeds. (DE # 51-2 at 6-12.) He also claims that defendants had no intent to follow through on the oral contract when it was formed, thus committing fraud. (*Id.* at 13-15.) Plaintiff supported his motion with several exhibits and affidavits from himself and four other witnesses. (*See* DE # 51-15, # 51-16, # 51-17, # 51-18.)

  Defendants assert that they never agreed to any oral contract with plaintiff. (DE # 60 at 2, 6.) Specifically, they directly dispute that they agreed to a hire plaintiff based on contingency, which is plaintiff's core contention. (*Id.* at 6.) Because defendants contend they never formed an oral contract with plaintiff, they argue that there cannot be any fraud in making any contract. (*Id.*)

  In his reply, plaintiff argues that there is no genuine issue of material fact, and that defendants' behavior shows that the terms of the contract were as he claims. (DE # 76 at 1-6.) He also presents, for the first time, an alternative argument– that he is entitled to summary judgment under the doctrine of equitable estoppel . (*Id.* at 7-8, 10-11.)

4

Specifically, he claims that defendants induced him to do work on their behalf by not rejecting the proposed contingency arrangement and signing the legal documents he prepared for them, but never intended to pay him. (*Id.* at 2, 7-8, 10-11.)

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court's function is not to weigh the evidence but merely to determine if "there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The court must ask whether "there are genuine factual issues that can properly be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. In the summary judgment context, a "genuine issue" is not a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, "a genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). In assessing whether a genuine issue of material fact exists, the court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *See Liberty Lobby, Inc.*, 477 U.S. at 255; *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001).

**III. DISCUSSION**

*A. Plaintiff's Breach of Contract Claim*

Plaintiff first moves for summary judgment on his breach of contract claim. (DE # 51-2 at 6-12.) Under Indiana law, in order to establish a breach of contract a plaintiff must demonstrate "the existence of a contract, the defendant's breach thereof, and damages." *American Family Mut. Ins. Co. v. Matusiak*, 878 N.E. 2d 529, 533 (Ind. App. 2007) (quotation omitted).

Plaintiff argues that there is no genuine issue as to any material fact regarding any of these three elements. He is demonstrably wrong. Even in their *pro se* filings, defendants directly disputed the first element– consistently arguing that they never agreed to any oral contingency arrangement with plaintiff. (*See* DE # 12 at ¶ 1.) In response to the current summary judgment motion, defendants Harvey, Tad, and Michael have all filed affidavits, all specifically alleging that they did not agree to any contingency arrangement with plaintiff, telling him during their conference call that they were not going to agree to anything at that time and that any agreement would have to be writing. (DE # 61; DE # 62; DE # 63.)

Plaintiff points to affidavits filed by himself (DE # 51-19; DE # 51-20), Arthur Douglas (DE # 51-15), Hannibal Abdullah El (DE # 51-16), Dana McCusker (DE # 51-17), and Angel Lynn (DE # 51-18), particularly his, Douglas's and Abdullah El's affidavits, which allege that they heard defendants agree to a contingency contract during a telephone conference call. (DE # 51-15 at 3; DE # 51-16 at 2-3; DE # 51-19 at 7-

6

8.) However, Harvey, Tad and Michael all explicitly allege that they never agreed to any contingency contract during that conference call. (DE # 61 at 2; DE # 62 at 2; DE # 63 at 2.)

Plaintiff argues that defendants' conduct belies their claim that there was no contract, but this is an argument regarding defendants' credibility and the weight of the evidence that should be reserved for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (when considering summary judgment, court's function is not to weigh the evidence). At this point in the proceedings, the court only determines whether defendants dispute any material fact. Here, the Hoovers clearly dispute *the* key fact in the case.

Thus, this court is confronted with a textbook genuine issue of material fact. Plaintiff and several of his witnesses swear that defendants orally agreed to a contract. Defendants swear that they did not, and instead explicitly deferred any decision. In this situation, it is indisputable that a "reasonable jury" could credit defendants' account, and thus rule in their favor. *See Buscaglia*, 25 F.3d at 534. When construing all facts and drawing all reasonable inferences in favor of defendants, as this court must, *see Basith*, 241 F.3d at 926, the result becomes even more patently obvious— a genuine issue of material fact exists in this case regarding the primary issue of whether a contract was formed. Plaintiff is therefore not entitled to summary judgment on his breach of contract claim.

*B. Plaintiff's Fraud Claim*

Plaintiff also moves for summary judgment on his claim that defendants committed fraud in forming the alleged contract. (DE # 51-2 at 13-15.) This claim can be dealt with even more succinctly. Defendants allege via affidavits that they never formed any agreement or contract with plaintiff. (DE # 61 at 2; DE # 62 at 2; DE # 63 at 2.) Since they dispute the very existence of this alleged contract, there is certainly a genuine issue of material fact regarding whether defendants committed fraud in making that contract. Plaintiff is not entitled to summary judgment on this claim either.

*C. Plaintiff's Equitable Estoppel Claim*

In his reply brief, plaintiff, for the first time, raises a claim of equitable estoppel. (de # 76 at 7-8.) This claim is not presented in plaintiff's complaint. (*See* DE # 1.) Neither does plaintiff raise it in his motion for summary judgment. (*See* DE # 51; DE # 51-2.) And it is well settled that a party moving for summary judgment cannot present new arguments or facts in its reply brief. *See United States v. Stevens*, 380 F. 3d 1021, 1025 (7th Cir. 2004) (arguments presented in reply brief will not be considered); *Stark v. PPM America, Inc.*, No. 01 C 1494, 2002 WL 31155083, at *7 (N.D. Ill. Sept. 26, 2002) (same).[1] Thus, the court will not consider plaintiff's equitable estoppel argument.

Even if it were to consider such an argument, however, plaintiff would still not merit summary judgment. Equitable estoppel is available when "one party, through its . . . course of conduct, knowingly misleads or induces another party to believe and act

---

[1] This same rule prevents this court from considering the several new affidavits that plaintiff has recently filed along with his reply brief. (*See* DE # 72 - # 74; DE # 77.)

upon its conduct in good faith and without knowledge of the facts." *MicroVote General Corp. v. Office of Secretary of State*, 890 N.E. 2d 21, 27 (Ind. App. 2008). As plaintiff explains (DE # 76 at 7), under Indiana law, an equitable estoppel claim has four requirements— "(1) a representation or concealment of material facts; (2) made with knowledge, actual or constructive, of the facts and with the intention that the other party act upon it; (3) made to a party ignorant of the facts; and (4) which induces the other party to rely or act upon it to his detriment." *Id.* In this case, construing all facts and reasonable inferences in favor of defendants, *see Basith*, 241 F.3d at 926, plaintiff's claim would fail because defendants properly allege that they specifically told plaintiff that they were not agreeing to any contract at that time, and that any contract would have to be in writing. (DE # 62 at 2.) Thus, again construing the facts in favor of defendants, there was no "representation or concealment of material facts," there was no "intention" that plaintiff act upon any such representation, and there was no inducing plaintiff to believe that he should begin working for defendants. Therefore, even if this court were to consider plaintiff's belated equitable estoppel claim, such a claim would fail.

*D. Defendants' Motions to Strike*

Defendants moved to strike various portions of plaintiff's exhibits and affidavits supporting his motion for summary judgment. (DE # 53 - # 57.) To summarize, each of these motions note that the various affidavits contain statements not based on personal knowledge, contain legal conclusions, and relay hearsay. (*See id.*) While defendants are

largely correct that plaintiff's affidavits contain inappropriate and inadmissible allegations, the court need not substantively address these motions. Even with such inappropriate supporting evidence, plaintiff's motion for summary judgment is still not meritorious. Thus, defendants' motions to strike are moot.

## IV. CONCLUSION

Plaintiff's motion for summary judgment (DE # 51) is **DENIED**. Defendants' motions to strike (DE # 53; DE # 54; DE # 55; DE # 56; DE # 57) are **DENIED AS MOOT**.

                              **SO ORDERED.**

**DATED:** September 30, 2008

                              s/James T. Moody  
                              JUDGE JAMES T. MOODY  
                              UNITED STATES DISTRICT COURT